1    BINGHAM MCCUTCHEN LLP
     Peter Obstler (SBN 171623)
2    peter.obstler@bingham.com
     Zachary J. Alinder (SBN 209009)
3    zachary.alinder@bingham.com
     Marjory Gentry (SBN 240887)
4    marjory.gentry@bingham.com
     Three Embarcadero Center
5    San Francisco, CA 94111-4067
     Telephone:  415.393.2000
6    Facsimile:  415.393.2286

7    Attorneys for Defendant
     JPMorgan Chase Bank, N.A.

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13   SHELLY A. CLEMENTS, on behalf of herself      No. C 12-02179 JCS
     and all others similarly situated,
14                                                 **DEFENDANT JPMORGAN CHASE
                   Plaintiff,                      BANK, N.A.'S NOTICE OF MOTION
15           v.                                    AND MOTION TO DISMISS
                                                   PLAINTIFF'S COMPLAINT UNDER
16   JPMORGAN CHASE BANK, N.A.,                    F.R.C.P. 12(B)(6); MEMORANDUM
                                                   OF POINTS AND AUTHORITIES IN
17                 Defendant.                      SUPPORT**

18                                                 Date: September 21, 2012
                                                   Time: 9:30 a.m.
19                                                 Location: Courtroom G, 15th Floor
                                                   Judge: Hon. Joseph C. Spero
20

21

22

23

24

25

26

27

28

1     **PLEASE TAKE NOTICE** that on September 21, 2012 at 9:30 a.m., or as soon

2 thereafter as the Motion to Dismiss may be heard before the Hon. Joseph C. Spero, at the U.S.

3 District Court, Northern District of California, San Francisco Division, located at 450 Golden

4 Gate Avenue, San Francisco, California, Defendant JPMorgan Chase, N.A. ("Chase") will, and

5 respectfully does, move to dismiss Plaintiff Shelley A. Clements' Complaint under Rule 12(b)(6)

6 of the Federal Rules of Civil Procedure.

7     Chase brings its Motion to Dismiss on the ground that each cause of action fails to state a

8 claim for relief as a matter of law because the deed of trust and the regulations promulgated

9 under the National Flood Insurance Act by the Federal Emergency Management Agency

10 establish that Chase's conduct was not unreasonable, unfair, or unjust.

11     This Motion is based on Chase's Notice of Motion and Motion, the Memorandum of

12 Points and Authorities set forth below, Chase's Request for Judicial Notice and Declaration in

13 support, any Reply papers, all papers on file in this matter, and all other grounds presented to the

14 Court at any hearing.

15 DATED:  June 13, 2012              Bingham McCutchen LLP

16

17

18                          By:_____*/s/ Peter Obstler*_____

19                                 Peter Obstler
                             Attorneys for Defendant
                           JPMorgan Chase Bank, N.A.

20

21

22

23

24

25

26

27

28

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1

TABLE OF CONTENTS

2
Page

3    I.      INTRODUCTION ................................................................................... 1

4    II.     LEGAL STANDARD GOVERING A 12(B)(6) MOTION TO DISMISS ...................... 3

     III.    BACKGROUND ..................................................................................... 4
5
             A.     The National Flood Insurance Act .......................................................... 4
6
             B.     The Allegations in the Complaint .......................................................... 5
7    IV.     ARGUMENT ........................................................................................ 8

8            A.     Clements Cannot State A Viable Breach of Contract Claim ................................ 8

9            B.     Clements' Breach of the Implied Covenant Claim Fails ..................................... 11

             C.     Clements Failed To Provide Chase With The Requisite Notice Under The
10                  DOT ........................................................................................................ 13

11           D.     Clements Has Not Alleged A Viable UCL Claim .............................................. 14

             E.     Clements Has Not Stated A Claim for Unjust Enrichment Against Chase........... 16
12   V.      CONCLUSION ...................................................................................... 17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 12-02179 JCS

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1

## TABLE OF AUTHORITIES

2

Page

3

**FEDERAL CASES**

4
5

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................3

6

*Barrous v. BP P.L.C.*,
2010 WL 4024774 (N.D. Cal. Oct. 13, 2010) ........................................8

7
8

*Beyer v. Countrywide Home Loans Serv. LP*,
2008 WL 1791506 (W.D. Wash. April 18, 2008).........................2, 13, 14

9
10

*Bryant v. Mattel, Inc.*,
573 F. Supp. 2d 1254 (C.D. Cal. 2007) ...............................................3

11

*Flick v. Liberty Mut. Fire Ins. Co.*,
205 F.3d 386 (9th Cir. 2000)................................................................4

12
13

*Gerber v. First Horizon Home Loans Corp.*,
2006 WL 581082 (W.D. Wash. March 8, 2006)............................13, 14

14
15

*Gibson v. Chase Home Finance, LLC*,
2012 WL 1094323 (M.D. Fla. April 2, 2012)..............................2, 13, 14

16

*Grill v. BAC Home Loans Servicing LP*,
2011 WL 127891 (E.D. Cal. Jan. 14, 2011)............................................8

17
18

*Hutchison v. AT&T Internet Servs., Inc.*,
2009 WL 1726344 (C.D. Cal. May 5, 2009) .......................................14

19
20

*Kaufman & Broad-South Bay v. Unisys Corp.*,
822 F.Supp. 1468 (N.D. Cal. 1993) .....................................................3

21

*KFC Western, Inc. v. Meghrig*,
49 F.3d 518 (9th Cir. 1995).................................................................3

22
23

*McNeary-Calloway v. JPMorgan Chase Bank, N.A.*,
2012 WL 1029502 (N.D. Cal. 2012).............................................passim

24
25

*Ott v. Home Sav. & Loan Ass'n*,
265 F.2d 643 (9th Cir. 1958)..........................................................10, 12

26

*Paracor Fin. v. Gen. Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996)..........................................................3, 17

27
28

*Rodriguez v. Wells Fargo Bank, N.A.*,
2011 WL 2946381 (E.D. Cal. July 21, 2011) ....................................2, 11

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1
2

TABLE OF AUTHORITIES
(continued)

Page

3

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001).............................................................................3

4

5

*Thompson v. Ill. Dep't of Prof'l Regulation*,
   300 F.3d 750 (7th Cir. 2002).............................................................................4

6

*Wahl v. Am. Sec. Ins. Co.*,
   2008 WL 2444802 (N.D. Cal. June 16, 2008) ...................................................11

7

8

*Weisbuch v. County of L.A.*,
   119 F.3d 778 (9th Cir. 1997).......................................................................10, 12

9

10

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004).....................................................................10, 12

11

STATE CASES

12

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) .......................................................................................11

13

14

*Davis v. Ford Motor Credit Co.*,
   179 Cal. App. 4th 581 (2009) .......................................................................3, 16

15

16

*Lectrodryer v. Seoulbank*,
   77 Cal. App. 4th 723 (2000) .............................................................................17

17

*Walker v. Countrywide Home Loans, Inc.*,
   98 Cal. App. 4th 1158 (2002) ..................................................................3, 14, 15

18

19

FEDERAL STATUTES

20

42 U.S.C. § 4001 .....................................................................................................4

21

42 U.S.C. § 4002 ................................................................................................4, 15

22

42 U.S.C. § 4012 ................................................................................................4, 15

23

STATE STATUTES

24

Cal. Bus. & Prof. Code § 17200 .............................................................................1

25

RULES

26

Fed. R. Civ. P. 12 ............................................................................................1, 3, 8

27

28

1

<u>TABLE OF AUTHORITIES</u>
(continued)

2                                                                                          <u>Page</u>

3  **REGULATIONS**

4  44 C.F.R. § 62.23 ................................................................................................................5, 9, 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 12-02179 JCS

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2        Chase respectfully submits this memorandum of points and authorities in support of its

3    motion to dismiss Plaintiff Shelley A. Clements' ("Plaintiff" or "Clements") Class Action

4    Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6) in the above-captioned

5    action (the "Action").

6    **I.    INTRODUCTION**

7        All four of Clements' claims for relief fail because the underlying loan documents and

8    the federal regulations governing the placement of flood insurance under the National Flood

9    Insurance Act (the "NFIA") establish that the price of insurance premiums charged to place flood

10   insurance on Clements' property was reasonable, and not excessive.  Because of the explicit

11   support of these federal regulations, Clements' lender-placed <u>flood</u> insurance claims stand on

12   different ground from the lender-placed <u>hazard</u> insurance claims this Court recently considered

13   in *McNeary-Calloway v. JPMorgan Chase Bank, N.A.*, 2012 WL 1029502 (N.D. Cal. 2012) (the

14   "*McNeary* Action").  In the *McNeary* Action, this Court found that claims for breach of contract,

15   breach of the implied covenant, the "unfair" prong of California Business and Professions Code

16   § 17200, and unjust enrichment could not be resolved on a motion to dismiss because the Court

17   could not determine from the face of the pleading whether the amount of the premiums charged

18   for lender-placed hazard insurance was unreasonable or excessive, so as to constitute an abuse of

19   discretion by Chase.  *See id.* at * 21-32.

20       Unlike the hazard insurance rates at issue in *McNeary*, the Federal Emergency

21   Management Agency ("FEMA") promulgates regulations in conjunction with the NFIA that

22   establish permissible premium rates with respect to lender-placed flood insurance when servicers

23   such as Chase are required to place insurance on previously uninsured property.  The rate that

24   Chase charged Clements is well below the rate that FEMA authorizes.  (*Compare* Ex. D to

25   Complaint ("Compl.") *with* Request for Judicial Notice ("RJN"), Ex. A, National Flood

26   Insurance Program - Flood Insurance Manual ("Flood Insurance Manual") at MPPP-1.)  Because

27   the premium amounts that Chase charged Clements are below the rates set forth under the FEMA

28   regulations, Clements cannot prevail on her underlying claim that the price of the insurance

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1   obtained by Chase was unreasonably excessive.  In addition, Clements' allegations confirm that

2   Chase did not backdate any lender-placed insurance, but instead placed prospective insurance on

3   February 3, 2011, and refunded Clements the difference when she obtained her own insurance on

4   February 28, 2011.  Based on the FEMA regulations governing flood insurance rates under the

5   NIFA, Clements' Deed of Trust ("DOT"), and the specific allegations made by Clements in the

6   Complaint, none of the four causes of action alleged in the Complaint state a claim for relief as a

7   matter of law.

8        **The First Cause of Action**, for Breach of Contract, fails because the express language of

9   the DOT specifically authorized Chase to purchase flood insurance on Clements behalf in the

10   amounts Chase deemed necessary.  In the DOT, Clements specifically acknowledged that the

11   price for this insurance could be significantly higher than the price she could obtain on her own.

12   And because the price of the insurance that Chase purchased was less than the price authorized

13   by FEMA, Clements cannot plausibly claim that the premiums that Chase paid for the insurance

14   were unreasonable or excessive.

15        **The Second Cause of Action**, for Breach of the Implied Covenant, fails because, as

16   stated above, the express language of the DOT authorized Chase to purchase flood insurance in

17   the amount it deemed necessary and at a significantly higher price than Clements could obtain on

18   her own.  *Rodriguez v. Wells Fargo Bank, N.A.*, 2011 WL 2946381, at *3 (E.D. Cal. July 21,

19   2011) ("the implied covenant is limited to assuring compliance with the *express terms of the*

20   *contract*, and cannot be extended to create obligations not contemplated in the contract.")

21   Because the rate of flood insurance obtained was again less than that authorized by FEMA,

22   Clements cannot argue that Chase's conduct was unreasonable or an abuse of its express rights to

23   place insurance under the DOT.

24        Further, both the **First and Second Causes of Action** fail because, under the terms of the

25   DOT, Clements was required to provide Chase with written notice prior to asserting any claims

26   that Chase had "breached any provision of, or any duty owed by reason of" the DOT.  *Beyer v.*

27   *Countrywide Home Loans Serv. LP*, 2008 WL 1791506, *3 (W.D. Wash. April 18, 2008);

28   *Gibson v. Chase Home Finance, LLC*, 2012 WL 1094323, *2 (M.D. Fla. April 2, 2012).

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1    Clements' **Third Cause of Action**, brought under the "unfair" prong of the UCL, fails

2    for the same reasons as her contract-related claims: (i) Chase was contractually entitled to

3    purchase the insurance in the amount and at the rate that it did and Clements cannot plausibly

4    allege backdating here; (ii) Congress and FEMA have already weighed the utility of Chase's

5    conduct and determined that the benefits outweigh the harm; (iii) allegations that an affiliate

6    received a commission are insufficient to establish a claim under the UCL; and, (iv) Clements'

7    Complaint is devoid of allegations establishing that she could not have reasonably purchased the

8    required insurance herself, thereby avoiding the alleged harm. *Walker v. Countrywide Home*

9    *Loans, Inc.*, 98 Cal. App. 4th 1158, 1176-78 (2002); *Davis v. Ford Motor Credit Co.*, 179 Cal.

10   App. 4th 581, 594 (2009).

11   Finally, Clements' **Fourth Cause of Action**, for Unjust Enrichment, fails because (i) the

12   rate charged by Chase was less than that authorized by FEMA and therefore is not "unjust" as a

13   matter of law, and (ii) Clements' claims rest on purported violations of an express, written

14   contract, which governs the relationship between the Parties. *Paracor Fin. v. Gen. Elec. Capital*

15   *Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

16   **II.    LEGAL STANDARD GOVERING A 12(b)(6) MOTION TO DISMISS**

17   To survive a 12(b)(6) motion to dismiss, a complaint must plead sufficient factual matter

18   that, accepted as true for purposes of the motion, states a claim for relief that is plausible on its

19   face. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, courts "need not accept any

20   unwarranted deductions of fact, or conclusory legal statements cast in the form of factual

21   allegations." *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1260 (C.D. Cal. 2007); *see also Iqbal*,

22   129 S. Ct. at 1950 ("[P]leadings that, because they are no more than conclusions, are not entitled

23   to the assumption of truth."). Unwarranted inferences undeserving of deference include

24   conclusions contradicted by alleged factual details. *Sprewell v. Golden State Warriors*, 266 F.3d

25   979, 988-89 (9th Cir. 2001). The Court should consider documents attached to the complaint

26   and incorporated therein by reference as part of the Complaint. *Kaufman & Broad-South Bay v.*

27   *Unisys Corp.*, 822 F.Supp. 1468, 1472 (N.D. Cal. 1993), *disapproved on other grounds by KFC*

28   *Western, Inc. v. Meghrig*, 49 F.3d 518, 523 (9th Cir. 1995). That is particularly true in this case

1  because "a written instrument contradicts allegations in a complaint to which it is attached [and

2  that] *exhibit trumps the allegations*."  *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750,

3  754 (7th Cir. 2002) (emphasis in original; internal quotes omitted).

4  **III.    BACKGROUND**

5          To assist the Court in resolving the legal issues raised by Chase in its Motion to Dismiss,

6  Chase first provides an overview of the federal laws and regulations governing flood insurance

7  before turning to the allegations set forth in the Complaint, including the material loan

8  documents and terms referenced therein.

9          **A.      The National Flood Insurance Act**

10          The NFIA and its implementing regulations and guidelines provide the backdrop to this

11  litigation.  The NFIA was enacted in response to Congress' concern that the private insurance

12  industry was unable to offer reasonably priced flood insurance on a national basis.  42 U.S.C. §

13  4001(a), (b); *see also Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 387 (9th Cir. 2000).  In

14  enacting the NFIA, Congress found that "the Nation cannot afford ... the increasing losses of

15  property suffered by flood victims, most of whom are still inadequately compensated despite the

16  provision of costly disaster relief benefits."  42 U.S.C. § 4002(a)(5).  Therefore the NFIA

17  "requires the purchase of flood insurance by property owners who are being assisted by ...

18  federally supervised, regulated, or insured agencies or institutions in the acquisition ... of land or

19  facilities located ... in identified areas having special flood hazards."  42 U.S.C. § 4002(b)(4).

20  Further, the NFIA authorizes federally regulated lenders and servicers to purchase flood

21  insurance when borrowers fail to purchase flood insurance themselves.  42 U.S.C. § 4012a(b).  In

22  light of this statutory framework, the NFIA has been described as "a child of Congress,

23  conceived to achieve policies which are national in scope" with "the federal government

24  participat[ing] extensively in the program both in a supervisory capacity and financially."  *Flick*,

25  205 F.3d at 390 (citing *Brazil v. Giuffrida*, 763 F.2d 1072, 1075 (9th Cir. 1985)).

26          As part of the federal government's efforts to ensure that all properties located within

27  special flood hazard areas are adequately insured, FEMA, one of the regulatory agencies in

28  charge of implementing the NFIA, has established the Mortgage Portfolio Protection Program

1   (the "MPPP").  44 C.F.R. § 62.23(l)(1).  The MPPP is an optional program, enacted to encourage

2   lenders and servicers to conduct a review of their mortgage portfolio to identify instances where

3   securitized properties located in flood zones have not been adequately insured.  (*See* RJN, Ex. A,

4   Flood Insurance Manual at MPPP-1.)  The MPPP authorizes lenders and servicers to place flood

5   insurance on a property, after providing the borrower an opportunity to independently purchase

6   the requisite insurance, at rates "sufficient to recover the full cost of this program in recognition

7   of the uncertainty as to the degree of risk a given building presents due to the limited

8   underwriting data" available as a result of the borrower's failure to respond to previous notices.

9   44 C.F.R. § 62.23(l)(1).  Currently the lowest insurance rate available through the MPPP is

10  $1.01/$100 of building coverage, exclusive of fees and taxes with a $1,000 deductible.  (*See*

11  RJN, Ex. A, Flood Insurance Manual at MPPP-1; MPPP-4, § R.)

12          **B.      The Allegations in the Complaint**

13          On July 27, 2005, in connection with the refinancing of her previous mortgage, Clements

14  obtained a mortgage on her condominium memorialized through the DOT.  (Compl. at ¶ 14; Ex.

15  A to Compl.)  Under the terms of the DOT, Clements agreed to keep her condominium insured

16  against hazards, including flood "in the amounts (including deductible levels) and for the periods

17  that Lender requires."  (Ex. A to Compl. at ¶ 5.)  Clements also agreed that "[w]hat Lender

18  requires pursuant to the preceding sentences can change during the term of the Loan."  (*Id.*)  In

19  the event that Clements failed to maintain the required insurance, Clements agreed that "Lender

20  may obtain insurance coverage, at Lender's option and Borrower's expense" and that there was

21  "no obligation to purchase any particular type or amount of coverage."  (*Id.*)  Clements also

22  acknowledged that in the event Chase was required to purchase insurance on her behalf, the cost

23  of that insurance coverage "might significantly exceed the cost of insurance that [Clements]

24  could have obtained."  (*Id.*)

25          On December 3, 2010, Chase sent Clements a letter informing her that her condominium

26  is located in a special flood hazard zone, and as a result Clements was required to obtain flood

27  insurance.  (*Id.* at ¶ 18, Ex. B to Compl.)  Prior to the receipt of Chase's letter, Clements had

28  never obtained flood insurance for her condominium.  (*Id.* at ¶¶ 14-17.)  Chase's letter bore the

1   caption:

2                **NOTICE OF SPECIAL FLOOD HAZARD**
        **AND AVAILABILITY OF FEDERAL DISASTER RELIEF ASSISTANCE**

3         **PLEASE READ CAREFULLY - YOUR ATTENTION IS REQUIRED**

4   (*Id.*, Ex. B to Compl. (emphasis in original).)  In this letter, Chase informed Clements that she

5   was required to obtain coverage in the lesser amount of $250,000 or 100% of the full

6   replacement cost value of the condominium.  (*Id.*)  The letter further informed Clements that

7   Chase required proof of the required flood insurance within 45 days from her receipt of the letter

8   and that absent her obtaining the requisite insurance, Chase would be required to purchase

9   limited flood insurance "at a cost that is likely to be much higher than you would pay on your

10   own." (*Id.*)

11       Despite the fact that the letter was from Clements' loan servicer (Chase), was addressed

12   to her, included the specifics of her loan number and her address, and contained a warning in

13   bold that her attention was required, Clements claims that she did not respond to the December 3,

14   2010 letter because she believed it was "a hoax, scam, or junk mail."  (Compl. at ¶ 19.)

15       On January 5, 2011, Chase sent Clements a second letter regarding the need for her to

16   obtain flood insurance.  (*Id. at* ¶ 20, Ex. C to Compl.)  This letter bore the caption:

17           **NOTICE OF PLACEMENT OF FLOOD INSURANCE**

18       **PLEASE READ IT CAREFULLY - YOUR ATTENTION IS REQUIRED**

19   (Ex. C to Compl. (emphasis in original).)  In this letter, Chase once again informed Clements of

20   the need for her to obtain flood insurance of $250,000 or 100% of the full replacement cost value

21   of the condominium.  (*Id.*)  The letter explained that in the event Chase was required to purchase

22   the insurance on her behalf, Chase would obtain $250,000 worth of coverage and that the annual

23   cost of this coverage would be $2,250.  (*Id.*)  The letter further explained that the amount for this

24   coverage was "likely to be much higher than insurance you obtain on your own" and that the

25   amount of insurance Chase would obtain would not cover her furniture or other personal effects.

26   (*Id.*)  Further, Chase disclosed that in the event Chase was required to purchase insurance on

27   Clements' behalf, "a licensed affiliate of Chase will receive a commission."  (*Id.*)  In the letter,

28   Chase also "strongly recommend[ed] that you or your association obtain your own insurance

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1    coverage." (*Id.*)  Included in the January 5, 2011 letter was an insurance binder, issued by

2    American Security Insurance Company, providing temporary flood insurance coverage, to take

3    effect approximately a month later, on February 3, 2011.  (*Id.*)

4         In response to the January 5, 2011 letter, Clements attempted to challenge Chase's

5    determination that the condominium was in a flood zone.  (Compl. at ¶ 22.)  Clements also

6    contacted her Home Owners Association ("HOA") to determine if there was flood insurance in

7    place through the HOA (which there was not).  (*Id.*)  Despite now knowing she could easily

8    avoid the lender-placement of insurance by doing so herself, Clements does not allege that she

9    made any effort to obtain the required flood insurance.  (*See generally* Compl.)

10        On February 8, 2011, Chase sent Clements a final letter informing her that because she

11   had not purchased flood insurance, Chase had purchased flood insurance on her behalf for the

12   amount of $250,000, with an annual premium of $2,250 with a $750 deductible.  (Compl. at ¶¶

13   24-26, Ex. D to Compl.)  These terms mirror those previously disclosed in the January 5, 2011

14   letter and work out to a rate of $0.90/$100 of building coverage, including fees and taxes.  In

15   addition to providing Clements with the terms of the policy, Chase again informed Clements of

16   the need for her to obtain flood insurance in the lesser amount of $250,000 or 100% of the full

17   replacement cost value of the condominium.  (Ex. D to Compl.)  Chase also disclosed that "a

18   licensed affiliate of Chase was paid a commission in connection with the policy" that was

19   purchased and that the flood insurance policy that was purchased had "limited coverage and may

20   be much more expensive than one that you or your Homeowners Association ... can obtain on

21   your own."  (*Id.*)

22        Nearly four months after Chase first informed Clements of the need for her to acquire

23   flood insurance, Clements purchased her own flood insurance policy which became effective on

24   February 28, 2011.  (Compl. at ¶ 28.)  Upon notification that Clements had obtained the required

25   insurance, Chase refunded the premium that had been charged to Clements for the insurance

26   purchased on her behalf, minus the pro-rated portion to account for the time period between

27   February 3, 2011 and February 28, 2011, during which the lender-placed insurance purchased by

28   Chase was the only flood insurance in effect.  (*Id.* at ¶ 29.)

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1  **IV.    ARGUMENT**

2          Chase's alleged placement of flood insurance at rates that fall below those permitted by

3  FEMA regulations establishes that the challenged lender-placed flood insurance practices in this

4  Action are reasonable and a proper exercise of Chase's discretion under the express terms of the

5  DOT that Clements executed.  Accordingly, each of Plaintiffs' four causes of action fails to state

6  a claim for relief as a matter of law and should be dismissed with prejudice under Rule 12(b)(6).

7          **A.     Clements Cannot State A Viable Breach of Contract Claim**

8          In *McNeary*, this Court found that the Plaintiffs had sufficiently pled a claim for breach

9  of contract because it could not determine from the pleadings whether Chase's alleged

10  backdating of insurance policies and the rates at which hazard insurance was purchased

11  constituted a reasonable exercise of its contractual rights to place insurance after the Plaintiffs

12  had allowed their private hazard insurance to lapse.  *See McNeary-Calloway*, 2012 WL 1029502

13  at *21-25.  Unlike the Plaintiffs in *McNeary*, Clements does not – and cannot – allege facts

14  sufficient to establish that the rates that Chase allegedly charged in connection with the placing

15  of flood insurance on the property were unreasonable in light of the MPPP rates authorized by

16  FEMA.

17          "[T]o state a claim for breach of contract, the plaintiff must plead: 1) the existence of the

18  contract; 2) plaintiffs' performance or excuse for nonperformance of the contract; 3) defendant's

19  breach of the contract; and 4) resulting damages."  *See Grill v. BAC Home Loans Servicing LP*,

20  2011 WL 127891, at *3-4 (E.D. Cal. Jan. 14, 2011) (dismissing breach of contract claim where

21  written documentation directly contradicted allegations regarding alleged agreement to modify

22  plaintiffs' mortgage) (quoting *Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co.,* 116 Cal.

23  App. 4th 1375, 1391 n.6 (2004)).  "A court may resolve contractual claims on a motion to

24  dismiss if the terms of the contract are unambiguous."  *Barrous v. BP P.L.C.*, 2010 WL 4024774,

25  *5 (N.D. Cal. Oct. 13, 2010)(*citing Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir.

26  2000)).

27          In the Complaint, Clements concedes that, under the terms of the DOT, Chase is entitled

28  to require Clements to obtain flood insurance and, in the event that Clements failed to obtain the

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1    required insurance, to purchase insurance on her behalf.  (Compl. at ¶ 2, Ex. A to Compl.)  Under

2    the DOT, "the cost of insurance coverage so obtained might significantly exceed the cost of

3    insurance that Borrower could have obtained" and that Chase was not required to purchase "any

4    particular type or amount of coverage."  (Ex. A to Compl. at ¶ 5.)

5         Clements' claim that Chase breached its contractual obligations by purchasing insurance

6    at excessive premiums fails because the premiums allegedly charged were less than those

7    allowed by federal regulation.  According to Clements, Chase purchased insurance on her behalf

8    that had a rate of $0.90/$100 of coverage inclusive of fees and taxes.  (*See* Ex. D to Compl.)  If

9    Chase had elected to purchase Clements' insurance through the MPPP program, as it was

10   authorized to do by FEMA, the rate would have been at least twenty cents higher per $100 of

11   coverage at $1.10/$100 of coverage plus fees and taxes.  According to FEMA, the higher rates

12   for flood insurance that result from a servicer's placement of flood insurance are justified and

13   reasonable because of "the uncertainty as to the degree of risk a given building presents due to

14   the limited underwriting data" due to the borrower's failure to respond and/or obtain their own

15   flood insurance.  44 C.F.R. § 62.23(1)(l).  In Clements' case, the insurance allegedly purchased

16   by Chase cost less than was authorized by law under the MPPP.  And because Clements

17   expressly acknowledged in the DOT that lender-placed insurance might cost significantly more

18   than she could obtain on her own, Clements cannot contend that the placing of that insurance at

19   rates that were less than the maximum allowed by federal regulation was anything other than a

20   valid, reasonable, expected, and legal exercise of Chase's express contractual rights under the

21   DOT.

22        Clements' allegation that Chase breached the DOT by purchasing insurance to cover

23   losses of up to $250,000, instead of determining the replacement cost and attempting to purchase

24   insurance to just cover the replacement cost of the condominium, fails for similar reasons.

25   Under the DOT, Chase is contractually entitled to require insurance "be maintained in the

26   amounts (including deductible levels) and for the periods that Lender requires."  (Ex. A to

27   Compl. at ¶ 5.)  As such, Chase was contractually entitled to require insurance at the amount it

28   deemed necessary.  So, while Chase provided Clements the option of purchasing insurance in the

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1   amount of either $250,000 or the replacement value for her condominium should she opt to

2   comply with her contractual obligations and obtain the required insurance, Chase was under no

3   contractual obligation to limit the amount of coverage to the amount that Clements believed was

4   sufficient.  Indeed, the outstanding balance of Clements' loan exceeded the alleged replacement

5   cost according to Clements, so if Chase only purchased insurance amounting to Plaintiffs'

6   alleged replacement cost, and property values changed, Plaintiff (and Chase) would not have

7   been fully covered.  And, in any event, Chase informed Plaintiff that, without further proof or

8   coverage by Plaintiff, Chase would purchase the maximum of $250,000 to ensure that Clements'

9   property was fully covered.

10      Finally, with respect to Clements' claim that Chase backdated coverage for periods where

11   no flood had occurred, the allegations and documents attached to the Complaint establish as a

12   matter of law that Chase did not purchase backdated insurance.  "When allegations of the

13   complaint are refuted by an attached document, the court need not accept the allegations as being

14   true."  *Ott v. Home Sav. & Loan Ass'n*, 265 F.2d 643, 646 n.1 (9th Cir. 1958).  To that end, "a

15   plaintiff may plead herself out of court ... [i]f the pleadings establish facts compelling a decision

16   one way, that is as good as if depositions and other expensively obtained evidence on summary

17   judgment establishes the identical facts."  *Weisbuch v. County of L.A.*, 119 F.3d 778, 783 n.1 (9th

18   Cir. 1997); *accord Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1098 (9th Cir. 2004).

19      Clements' case is no exception.  Clements admits that, on January 10, 2011, Chase

20   provided her with an insurance binder for flood insurance that was set to become effective

21   almost a month later, on February 3, 2011.  (Compl. at ¶ 20, Ex. C to Compl.)  When Clements

22   failed to obtain the required insurance, despite her contractual obligations to do so, the insurance

23   purchased by Chase went into effect on February 3, 2011 and continued to provide coverage

24   until Clements obtained her own insurance on February 28, 2011.  (*Id.* at ¶¶ 24, 28.)  As such,

25   the flood insurance provided only prospective coverage.  In addition, Clements' claims that

26   Chase improperly required premiums for periods covered by a lender loss payable endorsement

27   ("LLPE") run afoul of her allegations that, prior to Chase purchasing flood insurance on her

28   behalf, Clements had maintained no flood insurance on the condominium.  (*Id.* at ¶¶ 14, 16, 17.)

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1   An LLPE "serves to ensure that if a homeowner's insurance policy is cancelled for failure to pay

2   premiums, the lender's interest in the property will continue to be insured for a period of time, to

3   permit the lender either to make the premium payments itself, or to arrange for alternate

4   coverage." *Wahl v. Am. Sec. Ins. Co.*, 2008 WL 2444802, *1 (N.D. Cal. June 16, 2008).  By its

5   very definition, an LLPE can only exist if a property is previously insured.  Because Clements

6   admits that there were no previous flood insurance policies on her property prior to the policy

7   Chase purchased on her behalf, there could not be any overlap with the policy placed by Chase

8   on a pre-existing LLPE.

9           **B.      Clements' Breach of the Implied Covenant Claim Fails**

10          In *McNeary*, the Court found that the Plaintiffs had plausibly alleged that Chase had

11   abused its discretion and acted outside the Parties' reasonable expectations by purportedly

12   backdating insurance and purchasing overly-expensive insurance.  *McNeary-Calloway*, at *25.

13   In this Action, Clements cannot meet her burden under *McNeary* because the FEMA regulations

14   establish that Chase acted reasonably and exercised its contractual discretion in compliance with

15   state and federal law.

16          Under California law, an action for breach of "the implied covenant is limited to assuring

17   compliance with the *express terms of the contract*, and cannot be extended to create obligations

18   not contemplated in the contract." *Rodriguez*, 2011 WL 2946381, at *3 (*quoting Racine &

19   Laramie, Let. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992)).  Where a

20   contract invests one party with discretionary power, the covenant of good faith requires that such

21   power be exercised in good faith.  *See, e.g.*, *Carma Developers (Cal.), Inc. v. Marathon Dev.

22   Cal., Inc.*, 2 Cal. 4th 342, 372 (1992).  However, the covenant of good faith may not be used "to

23   prohibit a party from doing that which is expressly permitted by an agreement." *Id.* at 374.

24   Therefore, discretionary acts that are within the Parties' reasonable expectations at the time of

25   the formation of the contract cannot give rise to a claim for breach of the implied covenant.  *Id.*

26   at 372.

27          Clements' claim for breach of the implied covenant is based on a laundry list of actions

28   that are either directly contradicted by her Complaint and the exhibits attached to the Complaint

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1   or that constitute a reasonable exercise of Chase's discretion based on the Parties' expectations

2   and federal law.  (Compl. at ¶ 60.)

3           With respect to Clements' allegations based on the existence of prior flood insurance on

4   her property, these claims fail as a matter of law based on the contradictory allegations and

5   exhibits, in which Clements admits that there was no prior flood insurance on her property.  (*See,*

6   *e.g.* Compl. at ¶ 60(a) (alleging that Chase breached the covenant by failing to renew a lapsed

7   pre-existing policy); ¶ 60(h) (alleging overlapping policy coverage with LLPE);) *Ott*, 265 F.2d at

8   646 n.1; *Weisbuch*, 119 F.3d at 783 n.1; *Wright*, 360 F.3d at 1098.  Similarly, because the

9   insurance coverage obtained by Chase in January 2011 became effective on February 3, 2011

10  and thus was only prospective in nature, Clements' allegations with respect to backdating fail as

11  a matter of law.  (*See, e.g.* Compl. at ¶¶ 60(b)(i), 60(g).)  And, Clements' allegations that Chase

12  failed to provide her with an opportunity to opt out of having insurance force placed by Chase

13  are directly contradicted by the December 3, 2010 and January 5, 2011 notice letters, attached to

14  the Complaint, in which Chase specifically informed Clements that she could opt out of having

15  insurance placed by Chase by purchasing the required flood insurance herself.  (*See, e.g.* Compl.

16  at ¶ 60(i).)

17          Clements' contention that Chase breached the implied covenant by failing to secure the

18  most favorable terms possible for flood insurance due to its purported motivation to obtain

19  commissions for itself or its affiliates would impose an extra-contractual duty on Chase where

20  none exists.  (*See, e.g.,* Compl. at ¶¶ 60(b)(iii), 60(c)-(f).)  Under the DOT, Chase disclosed that

21  if it was required to purchase insurance on her behalf, it was possible that the cost of the

22  insurance "might significantly exceed the cost of insurance" that she could have obtained.  (Ex.

23  A to Compl. at ¶ 5.)  Based on these express contractual provisions, Clements could not

24  reasonably imply (or expect) that Chase covenanted to provide her insurance on the same terms

25  that she could obtain on her own.  And, as with the rest of her accusations that Chase acted

26  unreasonably or unfairly, these allegations do not support her breach of implied covenant claim

27  because Chase secured flood insurance for her at a rate below what FEMA authorized Chase to

28  purchase under the MPPP.

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1        Finally, Clements seeks to rewrite the terms of the DOT by accusing Chase of placing

2   excessive flood insurance coverage by purchasing $250,000 worth of insurance instead of what

3   Clements alleges was the replacement value of the condominium. (*See, e.g.*, Compl. at ¶¶

4   60(b)(ii); 60(d).) The express terms of the DOT authorize Chase to require that insurance "be

5   maintained in the amounts (including deductible levels) and for the periods that Lender

6   requires." (Ex. A to Compl. at ¶ 5.) And Chase informed Plaintiff that it would place insurance

7   up to $250,000, if Clements did not purchase the flood insurance herself. As such, Chase had no

8   contractual obligation to determine the actual replacement value and limit coverage to that

9   amount, and Clements cannot insert such a requirement now to dispute that Chase acted within

10   its contractual rights, implied and express, at all times.

11      **C.    Clements Failed To Provide Chase With The Requisite Notice Under The**
12              **DOT**

13        Because Clements fails to allege that she provided Chase with notice of her claims before

14   she filed this lawsuit, she failed to perform her obligations under the contract and, as a result,

15   cannot maintain a claim for breach. (*See generally* Compl.) A plaintiff's failure to comply with

16   a contractual notice provision constitutes a procedural bar to bringing contract-based claims.

17   *Beyer*, 2008 WL 1791506 at *3; *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082,

18   *2 (W.D. Wash. March 8, 2006); *Gibson*, 2012 WL 1094323 at *2.

19        Under the DOT notice provisions, Clements cannot pursue a contractual claim without

20   first providing Chase with advance written notice of any dispute or alleged violation under that

21   contract. The purpose of the notice provision is to ensure that the party who is accused of

22   breaching the DOT has a reasonable and fair opportunity to cure the alleged dispute or breach:

23              Neither Borrower nor Lender may commence, join, or be joined to any judicial
24              action (as either an individual litigant or the member of a class) that arises from
               the other party's actions pursuant to this Security Instrument or that alleges that
25              the other party has breached any provision of, or any duty owed by reason of, the
               Security Instrument until such Borrower or Lender has notified the other party
26              (with such notice given in compliance with the requirements of Section 15) of
               such alleged breach and afforded the other party hereto a reasonable period after
27              the giving of such notice to take corrective action.

28   (Ex. A to Compl. at § 20.) And Section 15 provides that "[a]ll notices given by Borrower or

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS

1     Lender in connection with this Security Instrument must be in writing." (*Id*. at § 15.)

2        As with all contracts, the obligation of a party to treat the other party reasonably and

3     fairly is a reciprocal obligation. Clements cannot accuse Chase of acting unreasonably and

4     unfairly when her own pleadings establish that she did not honor her reciprocal obligations under

5     the DOT. Clements' failure to honor her notice obligations to Chase and to allow it a fair

6     opportunity to address and resolve her claims before suing precludes her contract-based claims

7     as a matter of law. *Beyer*, 2008 WL 1791506 at *3; *Gibson*, 2012 WL 1094323 at *2; *Gerber*

8     2006 WL 581082 at *2.

9       **D.**      **Clements Has Not Alleged A Viable UCL Claim**

10        In *McNeary*, this Court found that Plaintiffs' "unfair" UCL claim could survive a motion

11     to dismiss based on allegations that Chase had "unfairly force-placed exorbitantly priced hazard

12     insurance," backdated the policy, received financial gains through arrangements with affiliates,

13     and Plaintiff "could [not] reasonably have avoided Defendants' alleged unfair practice."

14     *McNeary-Calloway*, 2012 WL 1029502 at *29. As with the other claims for relief, however, the

15     *Clements* case is not *McNeary*. That is particularly true with respect to her UCL claim because

16     Chase's conduct was not, and could not be, "unfair" under the UCL for at least four reasons.

17        **First,** as discussed in Sections IV.A and IV.B, Chase was contractually entitled to require

18     Clements to purchase flood insurance in the amount that it required, and did so a rate lower than

19     the rate authorized by FEMA. Because Chase acted within the terms of the DOT, purchased

20     insurance that cost less than the amount authorized by FEMA, and Clements' own allegations

21     preclude her claims of backdating, Chase's conduct cannot be "unfair" under the UCL. *Walker*,

22     98 Cal. App. 4th at 1176-77 (finding practice of charging borrowers for home inspections

23     performed by affiliate in a manner consistent with the terms of borrowers' mortgages did not

24     constitute an "unfair" practice under the UCL).

25        **Second,** because the benefit of Chase's conduct outweighs the purported harm alleged by

26     Clements, her UCL Claim fails as a matter of law. *Hutchison v. AT&T Internet Servs., Inc.*, 2009

27     WL 1726344, *8 (C.D. Cal. May 5, 2009) (utility of conduct in determining whether a practice is

28     "unfair" under the UCL can be determined as a matter of law); *see also Walker*, 98 Cal. App. 4th

1    at 1178 (finding that federal guidelines affirming the necessity for home inspections is

2    persuasive in establishing that the practice of performing home inspections and charging

3    borrowers for the inspections is not "unfair" under the UCL).  In enacting and expanding the

4    NFIA, Congress found that it is of national importance for potential flood victims to be

5    adequately insured in order to avoid the costs associated with providing costly disaster relief

6    benefits.  42 U.S.C. § 4002(a)(5).  To that end, the purchase of flood insurance is mandatory for

7    property located in flood hazard zones, such as Clements' condominium, and servicers are

8    authorized by statute to purchase the required insurance in the event that borrowers refuse to do

9    so for themselves.  42 U.S.C. § 4002(b)(4); 42 U.S.C. § 4012a(b).  The importance of insuring

10   that properties located in flood hazard zones are adequately insured is sufficiently great that

11   servicers are specifically authorized under the MPPP to purchase flood insurance at high rates

12   when they identify secured properties lacking adequate insurance.  44 C.F.R. § 62.23(l)(1).

13   Because Congress and FEMA have already weighed the benefits of requiring lender-placed flood

14   insurance against the harm, including higher rates, resulting to borrowers who fail to purchase

15   flood insurance, the Court may deny Plaintiffs' UCL claim outright.  Congress and FEMA have

16   already established that the utility of Chase's conduct outweighs the purported harm as a matter

17   of law.

18       **Third,** the allegation that an affiliate of Chase obtained a commission as a result of

19   Chase's purchasing insurance on Clements' behalf is insufficient to establish that Chase's

20   conduct was "unfair" under the UCL.  As the Court found in *Walker v. Countrywide Home*

21   *Loans, Inc.*, the fact that an affiliate was involved in the disputed transaction does not render the

22   practice "unfair" and, in fact, "[u]sing an affiliated company conceivably could reduce

23   transaction costs and increase efficiency, to the consumer's benefit."  98 Cal. App. 4th at 1177-

24   78.  Here, Chase disclosed, in advance of placing the flood insurance on Clements' behalf, that

25   an affiliate would receive a commission in the event that Clements failed to fulfill her contractual

26   obligations to obtain the required flood insurance.  (*See* Ex. C to Compl.)  And the actual rate of

27   the insurance charged, as described above in Section IV.A., refutes Clements' allegations that

28   Chase charged her an inflated price as a result of the commission.  Whether a commission was

1    paid to a Chase affiliate in connection with the purchase of flood insurance on Clements' behalf,

2    without more, does not provide support for Clements' claim that Chase's conduct was "unfair"

3    under the UCL.

4            **Fourth,** Clements' allegations fail to establish that she could not have reasonably avoided

5    her purported injury.  *Davis*, 179 Cal. App. 4th at 598 (dismissing UCL claim because alleged

6    injury could have been avoided had plaintiff complied with his contractual obligations of making

7    timely monthly installment payments.)  Clements concedes that Chase warned her at least twice

8    about the need for her to purchase flood insurance and the consequences if she failed to do so.

9    And, as disclosed in each of the two notice letters sent by Chase, Clements had the option to

10   avoid having insurance purchased on her behalf by complying with her contractual obligations

11   and purchasing the insurance herself.  (Ex. B and C to Compl.)  In her Complaint, Clements fails

12   to address or explain why she declined to obtain the required flood insurance during the 60-day

13   period between when she first received notice of the need for insurance and Chase's placement

14   of the insurance.  (*See generally* Compl.)  Clements' rationale for failing to purchase her own

15   insurance when Chase sent its first letter is that she thought it was a hoax.  Such an allegation is

16   not sufficient to turn her claimed mistake into Chase's problem.  (*See* Compl. at ¶ 19.)  And her

17   allegation that she opted to challenge the flood zone designation and make inquiries of her HOA

18   in response to Chase's second notice letter does not absolve her of her responsibilities, let alone

19   provide a basis to shift the cost for her error onto Chase.  (Compl. at ¶ 23.)  Indeed, nowhere

20   does Clements claim that she could not afford to purchase her own flood insurance, and

21   eventually she did so.  Clements was given every opportunity to purchase her own insurance, and

22   thereby avoid the 25 days of flood insurance coverage eventually purchased by Chase.  Having

23   failed to do so, despite repeated notices from Chase, Clements cannot now allege that Chase's

24   actions were unfair.

25          **E.**    **Clements Has Not Stated A Claim for Unjust Enrichment Against Chase**

26           This Court found in *McNeary* that an unjust enrichment claim, if a claim at all, is one for

27   restitution: "restitution may be awarded in lieu of breach of contract damages when the parties

28   had an express contract, but it was procured by fraud or is unenforceable or ineffective for some

1    reason." *McNeary-Calloway*, 2012 WL 1029502 at *31 (citing *McBride v. Boughton*, 123 Cal.

2    App. 4th 379 (2004)).  Thus, notwithstanding the disagreement among courts as to whether

3    unjust enrichment is ever cognizable as an independent action under California law, a plaintiff

4    must at least plead "receipt of a benefit and the unjust retention of the benefit at the expense of

5    another." *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000).  For the same reasons

6    that her other claims fail, including Chase's placement of insurance below the rates authorized

7    by FEMA, Clements cannot allege facts that establish that Chase's retention of any premium was

8    unjust when it purchased flood insurance for Clements' property.

9          Further, because a restitution claim is effectively "an action in quasi-contract, which does

10   not lie when an enforceable, binding agreement exists defining the rights of the parties," a

11   Plaintiff must allege that the underlying contract is somehow invalid.  *See Paracor Fin.*, 96 F.3d

12   at 1167.  Here, Clements' claim for unjust enrichment does not pass muster because her own

13   allegations concede that they are premised on Chase's exercise of its contractual rights to place

14   flood insurance under the DOT.  Clements specifically alleges that the purported unjust benefits

15   received by Chase were derived from claimed "violation[s] of the Deed of Trust/mortgages."

16   (Compl. at ¶ 70.)  Clements does not allege that Chase induced her to execute the DOT by fraud

17   or that the DOT is unenforceable or is otherwise null and void.  (*See, generally* Compl.)   Absent

18   such allegations, therefore, her claim for restitution or unjust enrichment fails as a matter of law

19   because the DOT is a valid contract that defines the Parties' rights with respect to the placement

20   of flood insurance by Chase.  *See Paracor Fin.*, 96 F.3d at 1167.

21   **V.     CONCLUSION**

22         The *Clements* Action is not the same as the *McNeary-Calloway* Action.  Chase not only

23   exercised its valid contractual rights to place flood insurance on property that Clements refused

24   to protect on her own, but in addition, Chase did so in full compliance with, and at rates that are

25   expressly supported by, applicable federal regulations.  Because Chase acted legally, reasonably,

26   and within its rights, and Clements did not, all of her claims fail as a matter of law.  Accordingly,

27   Chase respectfully requests that the Court grant its Motion and dismiss all of the claims averred

28   in Plaintiff's Complaint with prejudice.

1

2  DATED:  June 13, 2012                    Bingham McCutchen LLP

3                                           By:          /s/ Peter Obstler
                                                         _____
4                                                        Peter Obstler
                                                         Attorneys for Defendant
5                                                        JPMorgan Chase Bank, N.A.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHASE'S NOTICE OF MOTION AND MOTION TO DISMISS