1  STEVE W. BERMAN, *pro hac vice*
   THOMAS E. LOESER (202724)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   1918 Eighth Avenue, Suite 3300
3  Seattle, WA 98101
   Telephone: (206) 623-7292
4  Facsimile: (206) 623-0594
   steve@hbsslaw.com
5  toml@hbsslaw.com

6  SHANON J. CARSON, *pro hac vice*
   SARAH R. SCHALMAN-BERGEN, *pro hac vice*
7  PATRICK F. MADDEN
   BERGER & MONTAGUE, P.C.
8  1622 Locust Street
   Philadelphia, PA 19103
9  Telephone: (215) 875-4656
   Facsimile: (215) 875-4604
10 scarson@bm.net
   sschalman-bergen@bm.net
11 pmadden@bm.net

12 *Counsel for Plaintiffs and the Class*

13 [Additional counsel listed on signature page]

14                 UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16 SHELLY CLEMENTS, MATHEW SCHEETZ,        No. 3:12-cv-02179-JCS
   ROBERT PITERNIAK, and LAURA
17 PITERNIAK, individually and on behalf of all    **CLASS ACTION**
   others similarly situated,
18                                                  NOTICE AND MOTION FOR FINAL
                 Plaintiffs,                        APPROVAL OF CLASS ACTION
19                                                  SETTLEMENT
         v.
20                                                  Hearing Date: June 6, 2014
   JPMORGAN CHASE BANK, N.A., for itself           Hearing Time: 9:30 a.m.
21 and as successor by merger to CHASE HOME        Courtroom G, 15th Floor, SF
   FINANCE, LLC, and CHASE INSURANCE              Hon. Joseph C. Spero
22 AGENCY, INC.,
                                                   [Notice and Motion for Attorneys' Fees,
23               Defendants.                        Expenses and Service Awards separately
                                                   filed on April 15, 2014 for simultaneous
24                                                 hearing on June 6, 2014]

25

26

27

28

010312-11  691424 V1

1

## NOTICE AND MOTION

2     **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3         **PLEASE TAKE NOTICE** that on June 6, 2014 at 9:30 a.m., or as soon as the matter may

4     be heard, in the United States District Court of the Northern District of California, San Francisco

5     Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom G, 15th Floor,

6     Honorable Magistrate Judge Joseph C. Spero presiding, Plaintiffs and Class Counsel will and

7     hereby do move the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order

8     and judgment granting final approval to the class action settlement in this case.

9         This motion is supported by the Order Granting Preliminary Approval of Class Action

10    Settlement (Dkt. No. 61) and associated filings, the Motion for Attorneys' Fees, Expenses and

11    Service Awards (Dkt. No. 65) and associated filings, the memorandum below, and the following

12    supporting declarations filed herewith:

13        1.      Declaration of Arthur Olsen;

14        2.      Declaration of Richard Simmons on Behalf of the Settlement Administrator; and

15        3.      Declaration of Thomas E. Loeser, Esq.

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................... 1

II.  SUMMARY OF ARGUMENT ................................................................................ 2

III. STATEMENT OF THE CASE, SETTLEMENT, AND CLASS NOTICE ............................. 3

    A.   The Separately-Filed Fee Motion Details the Background of the Case and Settlement ........................................................................................................ 3

    B.   Summary of the Settlement Agreement and Allocation Plan ....................... 3

    C.   Summary of Class Notice ............................................................................. 7

    D.   Summary Chart ............................................................................................. 8

IV.  LAW AND ARGUMENT ......................................................................................... 9

    A.   The Court Should Grant Final Approval of the Settlement ......................... 9

        1.   The settlement is fair, reasonable and adequate ............................... 9

        2.   The objections do not implicate any cause to deny final approval ................ 12

        3.   The Settlement Class should be certified for settlement purposes .................. 14

        4.   Class Notice satisfied Rule 23 and due process .............................. 16

    B.   The Court Should Approve the Plan of Allocation ..................................... 17

    C.   The Court Should Approve Habitat For Humanity as *Cy Pres* and/or Designate Others ........................................................................................................ 17

    D.   The Court Should Approve Updated Litigation and Settlement Administration Costs ........................................................................................................... 17

V.   CONCLUSION ...................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Ali v. Wells Fargo Bank, N.A.*,
   No. 13-cv-876, 2014 U.S. Dist. LEXIS 13150 (W.D. Okla. Jan. 24, 2014) ...............................11

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................................14

*Blass v. Flagstar Bancorp, Inc.*,
   841 F. Supp. 2d 1280 (S.D. Fla. 2012)....................................................................................11

*Browne v. Am. Honda Motor Co.*,
   No. 09-06750, 2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) ...........................12

*Cannon v. Wells Fargo Bank, N.A.*,
   No. 12-cv-1376, Dkt. No. 106 (N.D. Cal. July 2, 2013) ..........................................................11

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992)..................................................................................................17

*Cohen v. American Sec. Ins. Co.*,
   735 F.3d 601 (7th Cir. 2013)....................................................................................................11

*Decambaliza v. QBE Holdings, Inc.*,
   No. 3:13-cv-286, Dkt. No. 71 (W.D. Wisc. Oct. 25, 2013) ......................................................11

*Degutis v. Financial Freedom LLC*,
   No. 2:12-cv-319, 2013 U.S. Dist. LEXIS 150086 (M.D. Fla. Oct. 18, 2013)...........................11

*Feaz v. Wells Fargo Bank, N.A.*,
   745 F.3d 1098 (11th Cir. Feb. 10, 2014) ..................................................................................11

*Gibson v. Chase Home Fin. LLC*,
   No. 8:11-cv-1302, Dkt. Nos. 102 & 108 (M.D. Fla. Apr. 2, 2012 & Apr. 30,
   2012)..........................................................................................................................................11

*Glass v. UBS Fin. Servs.*,
   2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. App'x
   452 (9th Cir. 2009) ....................................................................................................................10

*Gordon v. Chase Home Fin. LLC*,
   No. 8:11-cv-2001 2013 U.S. Dist. LEXIS 15461 (M.D. Fla. Feb. 5, 2013) ..............................11

*Gustafson v. BAC Home Loan Servicing, LP*,
   294 F.R.D. 529 (C.D. Cal. 2013)..............................................................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................9, 10, 14, 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................................2, 9, 10

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) ...........................................................................................11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) ..........................................................................................14

*In re Oracle Sec. Litig.*,
   1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994)........................................................17

*In re TD Ameritrade Account Holder Litig.*,
   No. C 07–2852 SBA, 2011 WL 4079226...................................................................................13

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)*,
   295 F.R.D. 438 (C.D. Cal. 2014)..................................................................................12

*Kolbe v. BAC Home Loans Servicing, LP*,
   738 F.3d 432 (1st Cir. 2013) .............................................................................................11, 12

*Kunzelmann v. Wells Fargo Bank, N.A.*,
   No. 9:11-cv-81373, 2013 U.S. Dist. LEXIS 3962 (S.D. Fla. Jan. 10, 2013) .............................11

*LaCroix v. U.S. Bank, N.A.*,
   No. 11-cv-3236, 2012 U.S. Dist. LEXIS 85494 (D. Minn. June 20, 2012) ...............................11

*Lane v. Wells Fargo Bank, N.A.*,
   No. 12-cv-4026, 2013 U.S. Dist. LEXIS 87669 (N.D. Cal. June 21, 2013) .............................11

*Leghorn v. Wells Fargo Bank, N.A.*,
   950 F. Supp. 2d 1093 (N.D. Cal. 2013).................................................................................3

*Leyva v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013).............................................................................................14

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................................17

*Marshall v. Holiday Magic, Inc.*,
   550 F. 2d 1173 (9th Cir. 1977) ..........................................................................................10

*McKenzie v. Wells Fargo Bank, N.A.*,
   931 F. Supp. 2d 1028 (N.D. Cal. 2013)...........................................................................3, 5, 6

*McKenzie v. Wells Fargo Home Mortg., Inc.*,
   No. 11-cv-4965, 2012 WL 5372120 (N.D. Cal. Oct. 30, 2012)..............................................11

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
  863 F. Supp. 2d 928 (N.D. Cal. 2012)...................................................................3, 4, 5

*Miller v. Wells Fargo Bank, N.A.*,
  No. 13-cv-1541, 2014 U.S. Dist. LEXIS 14060 (S.D.N.Y. Jan. 30, 2014)................................11

*Monterrubio v. Best Buy Stores, L.P.*,
  291 F.R.D. 443 (E.D. Cal. 2013)...................................................................................11

*Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)..................................................................................12

*Nwabueze v. AT&T Inc.*,
  No. C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013)...........................................14

*Radcliffe v. Experian Info. Solutions*,
  715 F.3d 1157 (9th Cir. 2013) ...................................................................................16

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009), *overruled on other grounds as stated in*, *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010).........................................................10, 11

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .....................................................................................10

*Wren v. RGIS Inventory Specialists*,
  No. 06-05778-JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011)..............................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...................................................................................... *passim*

## I.      INTRODUCTION

This motion seeks final approval of a nationwide class action settlement resolving allegations of abusive lender-placed flood insurance ("LPFI") practices by Defendants JPMorgan Chase Bank, N.A., Chase Home Finance, LLC, and Chase Insurance Agency, Inc. (collectively, "Chase") with respect to first lien residential mortgages. The settlement provides a $22,125,000 non-reversionary gross common fund for the benefit of the class of borrowers charged LPFI premiums from January 1, 2007 to July 31, 2012, as well as injunctive relief. The key events underlying this motion are summarized and incorporated as follows:

- In December 2013, the parties executed the Settlement Agreement and Release (the "Settlement Agreement") memorializing the proposed settlement. *See* Dkt. No. 51-1.

- On January 17, 2014, this Court issued the Order Granting Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order" or "Prelim. App."). *See* Dkt. No. 61.

- By February 27, 2014, the Settlement Administrator completed the initial mailing of the Court-approved Class Notice to each of the 117,106 unique Settlement Class members identified through Chase loan data. *See* Declaration of Richard W. Simmons on Behalf of the Settlement Administrator (the "Simmons Decl.") at ¶12.

- On April 15, 2014, Class Counsel separately filed the Motion for Attorneys' Fees, Expenses and Service Awards (the "Fee Motion" or "Fee Mtn."), and immediately posted it on the settlement website so that it was publicly accessible. *See* Dkt. No. 65.

- April 28, 2014 was the deadline for class members to request exclusion or object, and the Settlement Administrator received 19 requests for exclusion and 6 objections (4 from objectors who also requested exclusion). *See* Simmons Decl. at ¶¶ 21-23.

- In May of 2014, Chase produced additional loan data representing loans (the "corrective data") that it represents should not have been included in the original class data, as discussed in its Motion For Leave To Serve Corrective Notices (Dkt. No. 79) ("Chase Corrective Motion" or "Chase Corrective Mtn.").

Plaintiffs now seek an order and judgment granting final approval to the settlement, including the (updated) proposed allocation of the Settlement Fund, as follows:

| Gross Settlement Fund | $22,125,000.00* | 100% |
| Proposed Attorneys' Fees | ($5,531,250.00) | 25% |
| Attorneys' Expenses | ($158,999.56)** | 0.72% |
| Proposed Service Awards | ($15,000.00) | 0.07% |
| Settlement Administration | ($232,875.04)*** | 1.05% |
| **Net Distribution to Class** | **$16,191,785.58** | **73.18%** |

*plus interest ($4,910.18 through 4/30/2014)
**updated since Fee Motion
***updated since Fee Motion; does not include potential second distribution

## II.       SUMMARY OF ARGUMENT

The Court should approve the settlement as fair, reasonable, and adequate. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); Fed. R. Civ. P. 23(e)(2). First, the procedural indicia of fairness are strong. The settlement is the product of informed, arms-length negotiations overseen by an experienced mediator and conducted by highly resourced and experienced attorneys whose interests were well aligned with those of the class. Second, the settlement result is empirically excellent. The $22.125 million settlement fund is non-reversionary and represents nearly 30% of the best case scenario damages and nearly 75% of the most likely damages scenario. The settlement also provides for direct claims-paid distribution and valuable injunctive relief. And the class definition and release are narrowly tailored to the litigation. Third, the reaction of the class supports the settlement. After implementation of a comprehensive notice plan, the number of opt-outs and objectors is minimal. None of the objections articulates any cause for denying final approval.

The Court should also certify the class for settlement purposes because it satisfies Rule 23. *See* Fed. R. Civ. P. 23(a),(b)&(e). Class treatment is superior because the class is too numerous and their claims are too small for individual litigation. Common questions predominate because each class member's claims essentially turn on interpretation of the same federal law and corporate practices and materially identical contractual forms. A classwide settlement is appropriate here

because the claims of the representative plaintiffs are typical, and they and their counsel have fairly and adequately represented the interest of the class.

The proposed allocation of the net settlement fund (after attorneys' fees, expenses, and service awards, which are discussed in the Fee Motion) among the class members is also fair. Unless they opted-out, all class members will automatically be sent shares of the fund proportionate to their total potential damage claims arising from Chase's challenged practices, as calculated by Plaintiffs' Damages Expert, Arthur Olsen, in consultation with Class Counsel. *See* Declaration of Arthur Olsen (the "Olsen Decl."). There will be a second distribution if more than 5% of the net settlement fund remains after the first distribution. Any final residual will go to Habitat For Humanity or such other *cy pres* recipient as the Court approves. No settlement funds will ever revert to Chase.

### III.    STATEMENT OF THE CASE, SETTLEMENT, AND CLASS NOTICE

### A.    The Separately-Filed Fee Motion Details the Background of the Case and Settlement

The procedural history, facts, and law of this case are set forth in the Fee Motion (or "Fee Mtn.") (Dkt. No. 65, *et seq.*) as further detailed and affirmed in the supporting declarations filed therewith by Thomas Loeser, Esq. (Dkt. No. 66) ("Loeser Decl. ISO Fee Mtn.") and Shanon Carson, Esq. (Dkt. No. 73) ("Carson Decl. ISO Fee Mtn."). These pleadings are incorporated by reference and cited herein as indicated. This brief also relies on this Court's background in lender-placed insurance ("LPI") litigation, and lender-placed flood insurance ("LPFI") litigation in particular. *See*, *e.g.*, *McKenzie v. Wells Fargo Bank, N.A.*, 931 F. Supp. 2d 1028 (N.D. Cal. 2013) (flood insurance); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013) (flood insurance); *McNeary-Calloway v. JP Morgan Chase Bank*, *N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012) (hazard insurance).

### B.    Summary of the Settlement Agreement and Allocation Plan

The intent of the settlement is to resolve all claims arising from Chase's LPFI business practices with respect to first lien consumer-residential mortgage products (but not home equity

products even if they are in the first lien position).[1] *See* Settlement Agreement, Dkt. No. 51-1.

Accordingly, the "Settlement Class" and "Settlement Class Members" are defined as:

> All persons in the United States who were charged by JPMorgan for lender-placed flood insurance (unless such charge was flat cancelled/refunded in full) in connection with a consumer-purpose closed-end loan (excluding home equity lines of credit or home equity loans) secured by a mortgage on residential property during the time period from January 1, 2007, to July 31, 2012, excluding Defendants.

Settlement Agreement, § 2.cc.  And the "Released Claims" are limited to those "claims actually made or that could have been made on behalf of Settlement Class Members based on the facts asserted in the Consolidated Amended Complaint through the date this Settlement Agreement is executed." *Id.*, § 2.aa.; *see also* §§ 59-61.[2]

The principal consideration exchanged for the settlement and release is the $22.125 million "Gross Settlement Fund". *Id.*, § 2.q. The Settlement Agreement required Chase to deliver these funds within 15 days of preliminary approval for deposit into a Qualified Settlement Fund account with all interest accruing for the benefit of the Settlement Class. *See id.*, § 25. Chase has done so, and the fund has thus accumulated $4,910.18 in interest through April 30, 2014. *See* Loeser Decl., ¶ 6. Subject to final approval, on the settlement's "Effective Date" (*see id.* at § 2.m.) the Gross Settlement Fund will first be used to pay approved Class Counsel attorneys' fees and expenses, representative plaintiff service awards, and settlement administration expenses. *See id.* § 26. The Settlement Administrator will then distribute the remaining "Net Settlement Fund" to the Settlement Class Members on a claims-paid basis. *See id.* § 27.

Specifically, unless they opted-out, or their Class Notice was returned as undeliverable, every Settlement Class Member will be sent a check for their share of the Net Settlement Fund at the best available address the Settlement Administrator has found for them through the notice

---

[1] This is the foundation of Chase's Corrective Motion. "Plaintiffs' claims in this lawsuit are directed only to Chase's business practices that apply to mortgage loans in first lien position on [the] MSP [servicing platform]. Loans serviced on MSP that are in second lien position (as well as any loans or lines serviced on [the] VLS [servicing platform]) are subject to Chase's home equity business practices, which are different." Chase Corrective Mtn., pp. 3:7.

[2] Note that the release does not apply whatsoever to "Settlement Class Members whose Class Notices were returned as non-deliverable." *Id.*, § 61.

process. *See id.*, §§ 29-33; Simmons Decl., ¶¶ 13-15. The specific amount of the distribution to each class member depends on each's total potential damage claims under the three theories advanced in this case, summarized as follows:

- **Commission Claims**. Plaintiffs alleged that the commissions that Chase collected on LPFI premiums were unearned and essentially kickbacks. *See McKenzie*, 931 F. Supp. 2d at 1032 (the "Kickback theory"). For the purposes of calculating the settlement distribution, "Commission Damages" are defined as the amount of each class member's LPFI premiums that defendants received as commissions. *See* Settlement Agreement, § 29. Plaintiffs' expert has determined that commissions were 12.18% of the total premiums charged to each Settlement Class Member, and calculated the Commission Damages for each on that basis. *See* Olsen Decl.,¶ 14.

- **Backdating Claims**. Plaintiffs alleged that LPFI policies were improperly backdated to charge premiums for prior periods where no loss occurred. *See McNeary*, 863 F. Supp. 2d at 956. For the purposes of calculating the settlement distribution, "Backdating Damages" are defined as the premiums charged for LPFI placed (*i.e.*, effective) more than 60 days before the issue date of the policy. *See* Settlement Agreement, § 29. Plaintiffs' expert has made this calculation based on Chase's data. *See* Olsen Decl., ¶ 15.

- **Excess-Insurance Claims**. Plaintiffs alleged that LPFI policies were improperly placed in coverage amounts exceeding those allowed by law. *But see McKenzie*, 931 F. Supp. 2d at 1033 (<u>dismissing</u> "excessive insurance theory"). For the purposes of calculating the settlement distribution, "Excess Insurance Damages" are defined as the premiums charged for LPFI that exceeded the "New Flood Coverage Requirement" imposed injunctively by the settlement. *See* Settlement Agreement, §§ 16, 29. Plaintiffs' expert has made this calculation based on Chase's data. *See* Olsen Decl.,¶ 16.

The specific amount payable to each class member is based on a "Settlement Damages" formula that; (1) discounts the Excess-Insurance damages by a 0.25 risk multiplier based on this

Court's dismissal of the claim in *McKenzie*; and (2) then calculates each class member's individual Settlement Damages in a manner that avoids double counting among damage categories. *See* Settlement Agreement, §§ 29-30; Olsen Decl.,¶ 17.[3] Every class member is to be paid a *pro rata* share of the Net Settlement Fund based upon their individual Settlement Damages. By way of example:

    Net Settlement Fund $16,200,000

    Total Settlement Damages $50,681,022

    Factor is 31.96% = 16,200,000 / 50,681,022

    Class Members get 31.96% of their individual Settlement Damages.

*See* Olsen Decl.,¶ 19.[4]

The Settlement Agreement provides Settlement Class Members 120 days to cash their checks, and then provides for a second distribution in the event that the amount of money remaining in the Net Settlement Fund exceeds 5% of the original Net Settlement Fund (based upon uncashed checks). *See* Settlement Agreement, §§ 34-35. In that event, second settlement payments will be sent to all those Settlement Class Members who cashed their first checks for a share of the residual equal to the proportion of their original payments to the total of all the original payments that were cashed. *See id.*, § 35. Any unclaimed monies remaining will be paid to the Habitat For Humanity (www.habitat.org) or such other *cy pres* recipient that the Court approves. *See id.*, § 36. Nothing reverts to Chase under any circumstances. *See id.*

Finally, the Settlement Agreement also provides for very substantial injunctive relief. *See id.* at §§ 15-22. The eight distinct injunctive relief provisions include for example: a six year

---

[3] The methodology used to avoid double counting has been modified from the literal language of the Settlement Agreement to avoid absurd results. Olsen Decl., n. 4.

[4] The aggregate Settlement Damages calculation and factor are subject to nominal further adjustment as the number of class members and their Settlement Damages is refined based on the new data described in the Chase Corrective Motion, the exclusion of opt-outs, and other nominal factors. *See id.* Additionally, in order to avoid sending very small checks to roughly 30,300,000 class members who would otherwise receive checks for less than $5 (including thousands with payments less than $1) the plan of allocation proposes paying a $5 minimum award to every class member. This involves some complicated calculations, but, as the maximum net cost to the Net Settlement Fund of the proposal is manifestly substantially less than $151,500, the effect on the payouts to the other class members as a whole would be nominal as well. *See* Olsen Decl., ¶ 19.

1    complete moratorium on the receipt of commissions by Chase and its affiliates; shifting to a

2    competitive market based system for selecting LPFI providers; establishment of the "lesser of

3    three" flood insurance coverage requirement; and implementing a policy of reinstating borrowers'

4    (lapsed) voluntary insurance policies instead of force-placing expensive specialty products. *See id.*

5    Compared to Chase's prior practices, this injunctive relief will result in substantial monetary

6    savings for borrowers, including but not limited to Settlement Class Members, in the years to

7    come. *See* Loeser Decl. ISO Fee Motion, ¶ 27.

8    **C.      Summary of Class Notice**

9         The Settlement Administrator and its principal, Richard W. Simmons, are experts in class

10   notice and settlement administration programs. *See* Simmons Decl., ¶¶ 5-8. Following preliminary

11   approval, they dutifully performed the notice plan in accordance with the Settlement Agreement

12   and Preliminary Approval Order. *See id.*, ¶¶ 9-20. The data that Chase provided as both the class

13   list and basis for damages computations originally consisted of 252,287 records of LPFI

14   transactions for Settlement Class members, including loan numbers and contact information. *See*

15   *id*. After consolidating and de-duplicating the records, the Settlement Administrator determined

16   that the data represented 117,106 unique Settlement Class Members (and 119,776 unique loan

17   numbers). [5] *See id.*

18        After preliminarily updating and verifying the 117,106 member class list, the Settlement

19   Administrator sent the Court-approved Class Notice to each of them via first class mail. *See id.* It

20   also set up a toll free number and an email inquiry system, and published the Class Notice and

21   other important case documents and information on a dedicated settlement website. *See id.*;

22   www.chasefloodinsurancesettlement.com. From this initial mailing, the postal service returned

23   19,019 pieces of mail as *undeliverable* without any forwarding address. For these, the Settlement

24

25        [5] Early iterations of the data, provided to Plaintiffs' expert for the purposes of damages
     computations, lacked loan number and contact information that allowed for full de-duplication. *See*
26   Olsen Decl., ¶ 12. As a result, Mr. Olsen overstated the class membership count in connection with
     the preliminary approval motion, which should have been flagged as preliminary for this reason.
27   *See id.* This issue did not affect the damages computations he submitted at that time, though
     subsequent events have affected said computations slightly. *See id.*

28

MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 12-02179-JCS                                              - 7 -
010312-11  691424 V1

Administrator conducted additional searches based upon commercially available "skip trace" databases. *See id.*, ¶¶ 13-15. This resulted in updated contact information for 9,613 class members, to whom the Class Notice was promptly re-mailed. *See id.* Based on the above, there were approximately 9,406 (=19,019 minus 9,613) class members who were not locatable for mailed service of Class Notice in this case ("undeliverable(s)"). *See id.* The Settlement Administrator knows of no practicable way to mail notice to these class members. *See id.*, ¶ 15.

In accordance with the Preliminary Approval Order, the Class Notice instructed recipients to send requests for exclusion or objections to the Settlement Administrator postmarked by April 28, 2014. *See id.*, ¶¶ 21-23. As of the date of this filing, the Settlement Administrator has received 19 requests for exclusion and 6 objections, including 4 objections from class members who also requested exclusion. *See id.* The exclusion list is attached to Mr. Simmons's declaration as Exhibit C and redacted copies of each objection are attached as Exhibit D. *See id.*

On or about May 14, 2014, Analytics, in cooperation with Plaintiffs' damages expert, Arthur Olsen, analyzed the corrective data that Chase provided, and compared it to the existing class claims list. *See* Simmons Decl., ¶ 25. The consolidated corrective data represents 3,747 loans that Chase represents should not have been included in the original class data. *See id.* Deleting these 3,747 loans from the class list reduced the number of claims on the class list (a/k/a class members) by 3,241 (because some class members had multiple loans). *See id.* The corrective data thus reduces the class membership from 117,106 claims to 113,865 claims presently (before exclusion requests). *See id.*[6] Excluding *undeliverables*, the plan of allocation is to send initial distribution checks to an estimated 104,459 Settlement claimants (less opt-outs).

**D.    Summary Chart**

The following chart illustrates the most updated numbers as of this filing:

_____

[6] Class Counsel does not dispute Chase's position that the category of loans described in the Chase Corrective Motion are not class loans, but Plaintiffs' expert and the Settlement Administrator's analysis of the corrective data obviously disagrees materially with that set forth in the Corrective Motion. *See* Loeser Decl., ¶ 7. Class Counsel's understanding is that Chase agrees that its analysis is faulty, and will amend its motion based on further analysis and potentially additional data. *See id.*

| | ÷ Class Claims 104,459** | ÷ Commission Damages $29,633,832 | ÷ Best Case Damages $75,879,566 | ÷ Settlement Damages $50,681,022 |
|---|---|---|---|---|
| Gross Settlement Fund $22,125,000* | $211.81 | 74.6% | 29.2% | 43.7% |
| Net Settlement Fund $16,191,785.58* | $155.01 | 54.6% | 21.3% | 31.9% |

*plus interest ($4910.18 through 4/30/2014)
**Excludes undeliverables; does not account for opt-outs.

Olsen Decl., ¶¶ 19-20.

## IV.     LAW AND ARGUMENT

**A.     The Court Should Grant Final Approval of the Settlement**

### 1.     The settlement is fair, reasonable and adequate

Final approval should be granted because "the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth*, 654 F.3d at 946; Fed. R. Civ. P. 23(e)(2). "Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *Id.*, quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks omitted). Generally speaking, the central concern is that class counsel may – consciously or unconsciously – collude with the defendants by tacitly reducing the overall settlement in return for a higher attorney's fee. *See id.*

"To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *Id.* "The factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4) the amount offered in settlement;
> (5) the extent of discovery completed and the stage of the proceedings;
> (6) the experience and views of counsel;

(7) the presence of a governmental participant; and [7]
(8) the reaction of the class members to the proposed settlement.

*Id.*

"This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Ultimately, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), *overruled on other grounds as stated in*, *Dukes v. Wal—Mart Stores, Inc.*, 603 F.3d 571, 617 (9th Cir. 2010); *Hanlon*, 150 F.3d at 1027. Accordingly, where a "settlement is a product of informed, arms-length negotiations," it is entitled to a "presumption of fairness." *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014), citing *Rodriguez*, 563 F.3d at 965-66 ("we put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

Here, factors 4-6 weigh heavily in favor of the settlement because they encompass the evidence that the settlement is: (a) the product of vigorous, informed, arms-length negotiations; (b) conducted by highly experienced, resourced, and regarded Class Counsel; (c) who represented the interests of the Settlement Class in a procedurally sound manner; (d) and thus obtained a proposed gross settlement equal to nearly 75% of likely damages and nearly 30% of the best case damages scenario. *See* Loeser Decl. ISO Fee Motion, ¶¶ 11-27 (Dkt. No. 66); Carson Decl. ISO Fee Motion, ¶¶ 10-53 (Dkt. No. 73); Olsen Decl., ¶ 20. Moreover, collusion concerns are minimized in this case because the attorney fee sought is simply a 25% benchmark percentage-of-fund, which is favored

---

[7] The participation of a governmental entity presumably "serves to protect the interest of the class members." *Marshall v. Holiday Magic, Inc.*, 550 F. 2d 1173, 1178 (9th Cir. 1977). But where, as here, "[t]here is no indication that any governmental entity participated in the settlement of the instant action… this factor favors neither approval nor disapproval of the settlement." *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *15 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. App'x 452 (9th Cir. 2009).

precisely because it helps "ensure faithful representation by tying together the interests of class members and class counsel." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). Under such circumstances, there is no cause to second guess Class Counsels' decision in favor the settlement. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 453-454 (E.D. Cal. 2013) ("even in class action contexts … the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."); *see also Rodriguez*, 563 F.3d at 965.

      Factors 1-3 also weigh heavily in favor the proposed settlement. LPI litigation is complex, expensive, and risky, and has resulted in numerous dismissals and denials of class certification in numerous cases nationwide.[8] Due to the relatively low level of individual damages, the denial of class certification is tantamount to dismissal insofar as it terminates any hope of recovery for the vast majority of class members. Here, Chase is a formidable defendant with virtually unlimited resources to engage in litigation of extreme duration.

      Further, LPFI involve heightened complexity and risk because of the effect of the National Flood Insurance Act ("NFIA") and Federal Emergency Management Agency ("FEMA") regulations. *See*, *e.g.*, *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 447-449 (1st Cir.

---

[8] *See*, *e.g.*, *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. Feb. 10, 2014) (affirming dismissal of lender-placed insurance lawsuit); *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013) (same); *Kolbe*, 738 F.3d at 432 (*en banc*) (split decision resulting in affirming dismissal of force-placed flood insurance action); *Miller v. Wells Fargo Bank, N.A.*, No. 13-cv-1541, 2014 U.S. Dist. LEXIS 14060 (S.D.N.Y. Jan. 30, 2014) (dismissing force-placed insurance claims); *Ali v. Wells Fargo Bank, N.A.*, No. 13-cv-876, 2014 U.S. Dist. LEXIS 13150 (W.D. Okla. Jan. 24, 2014) (same); *Decambaliza v. QBE Holdings, Inc.*, No. 3:13-cv-286, Dkt. No. 71 (W.D. Wisc. Oct. 25, 2013) (same); *Degutis v. Financial Freedom LLC*, No. 2:12-cv-319, 2013 U.S. Dist. LEXIS 150086 (M.D. Fla. Oct. 18, 2013) (same); *Cannon v. Wells Fargo Bank, N.A.*, No. 12-cv-1376, Dkt. No. 106 (N.D. Cal. July 2, 2013) (dismissing backdating claims); *LaCroix v. U.S. Bank, N.A.*, No. 11-cv-3236, 2012 U.S. Dist. LEXIS 85494 (D. Minn. June 20, 2012) (dismissing force-placed insurance claims); *Gibson v. Chase Home Fin. LLC*, No. 8:11-cv-1302, Dkt. Nos. 102 & 108 (M.D. Fla. Apr. 2, 2012 & Apr. 30, 2012) (same and then striking counts of amended complaint concerning force-placed flood insurance); *McKenzie v. Wells Fargo Home Mortg., Inc.*, No. 11-cv-4965, 2012 WL 5372120 (N.D. Cal. Oct. 30, 2012) (dismissing over-insurance claims); *Blass v. Flagstar Bancorp, Inc.*, 841 F. Supp. 2d 1280 (S.D. Fla. 2012) (dismissing force-placed insurance claims); *see also Gustafson v. BAC Home Loan Servicing, LP*, 294 F.R.D. 529 (C.D. Cal. 2013) (denying class certification); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373, 2013 U.S. Dist. LEXIS 3962 (S.D. Fla. Jan. 10, 2013) (denying class certification); *Lane v. Wells Fargo Bank, N.A.*, No. 12-cv-4026, 2013 U.S. Dist. LEXIS 87669 (N.D. Cal. June 21, 2013) (denying class certification for non-California residents); *Gordon v. Chase Home Fin. LLC*, No. 8:11-cv-2001 2013 U.S. Dist. LEXIS 15461 (M.D. Fla. Feb. 5, 2013) (denying class certification).

1   2013). Even commission a/k/a kickback claims, for example, are subject to real risk by the

2   argument (albeit Plaintiffs' disagree) that the ultimate premium price paid by the borrowers is less

3   than that authorized by the federal scheme regardless of who received the premiums. These

4   arguments and defenses abound such that proceeding through class certification, trial, and likely

5   appeal against an entity like JPMorgan could involve litigation of extreme duration. *See* Loeser

6   Decl., ¶ 10. Factors 1-3 strongly favor the settlement because this case could have been litigated for

7   three times as long to reach the same (or a worse) result. *See id.*

8          Factor 8, the reaction of the class members, also strongly favors the settlement. The

9   "absence of a large number of objections to a proposed class action settlement raises a strong

10  presumption that the terms of [the settlement] are favorable to the class members." *Nat'l. Rural*

11  *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). In this case, another

12  exceptionally strong indication of the fairness of the settlement is the extraordinarily small number

13  and percentage of requests for exclusion and objections submitted by class members.

14          **2.     The objections do not implicate any cause to deny final approval**

15          Moreover, the content of the six (6) objections do not indicate any reason to deny final

16  approval. *See* Simmons Decl., Ex. D. "The fact that there is opposition does not necessitate

17  disapproval of the settlement. Instead, the court must independently evaluate whether the

18  objections being raised suggest serious reasons why the proposal might be unfair." *Browne v. Am.*

19  *Honda Motor Co*., No. 09-06750, 2010 U.S. Dist. LEXIS 145475, at *51 (C.D. Cal. July 29, 2010).

20  Although Class Counsel respects the objectors' feelings and frustrations, it is apparent on the face

21  of the objections that they fail to raise serious legal concerns about the fairness, reasonableness, or

22  adequacy of the settlement or class certification, as follows:

23      •   Mr. Fowle, Claim No. 1161414, requests exclusion and objects. He objects that he

24          could not both exclude himself and participate in the settlement, and to the fact that he

25          would have been automatically included in the settlement had he not opted-out. He

26          states that he is currently in a legal dispute with JPMorgan.

27

28

1    • Mr. Dillon, Claim No. 1216320, requests exclusion and objects that "JPMorgan Bank's
2       greed has prompted my objection and [illegible] violation of legal rights…so shall they
3       all go to hell as I pray for their departure."

4    • Mr. Molina, Claim No. 1030136, an attorney in Texas, objects or in the alternative
5       requests exclusion. His objection is that "it does not appear that Chase has to remove
6       any negative reporting from the credit bureaus". He states that he "instituted action
7       against Chase Bank over these issues in 2010".

8    • Mr. Jones, Claim No. 1244439, objects to the settlement but his objection consists
9       solely of his and the co-borrower's names and the words "Objection to the Claims
10      Administrator at [address of Claims Administrator]".

11   • Mr. Ross, Claim No. 1084845, objects that the settlement does not include claims or
12      relief for cases where "'forced-placed' flood insurance policy for an area that was not in
13      a flood zone, and did not require flood insurance." (emphasis omitted). His "concern is,
14      how is this situation going to be handled in this Class Action Settlement."

15   • Mr. Medica III, Claim No. 1251584, requests exclusion and objects (he states his letter
16      serves "as a formal objection and rejection of the agreed settlement"). He states he
17      spoke by phone with Class Counsel and was dissatisfied with their estimate of his
18      settlement proceeds. He also states: "While we greatly appreciate the group of attorneys
19      who have spent time and money on this class action suit, we feel the compensation of
20      ~180USD does not cover the money we 'lost' … [and] … believe the compensation that
21      the attorneys are receiving … compared to the individuals who incurred damages is not
22      reasonable." He rejects the settlement offer, and offers to settle for $8,500.

23   *See* Simmons Decl., Ex. D.

24          These objections do not raise meritorious concerns here because they fail to comment on

25   any specific aspect of the settlement. *See In re TD Ameritrade Account Holder Litig.*, No. C 07–

26   2852 SBA, 2011 WL 4079226, at *14 (N.D. Cal. Sept. 13, 2011) (overruling objection as

27   conclusory and unsubstantiated); *Wren v. RGIS Inventory Specialists*, No. 06-05778-JCS, 2011

28   U.S. Dist. LEXIS 38667, *40-41 (N.D. Cal. Apr. 1, 2011) (overruling objections submitted without

MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 12-02179-JCS                          - 13 -
010312-11 691424 V1

stated basis or that "do not go to the fairness of the settlement"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting broad unsupported objections as "of little aid to the Court").  The objections also fail to present any evidence to support their arguments.  *See Hanlon* 150 F.3d at 1021 (affirming final approval where "[t]he objectors presented no evidence" to support their arguments). Mr. Medica's objection to the amount he will receive does not implicate an unfair settlement and is resolved by his exclusion request. "That a more favorable result for some Class Members could potentially have been reached is not a sufficient reason to reject an otherwise fair and reasonable settlement." *Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *7 (N.D. Cal. Nov. 27, 2013), citing *Hanlon*, 150 F.3d at 1027.

### 3.     The Settlement Class should be certified for settlement purposes

The Settlement Class should be certified for settlement purposes because it meets the requirements of Rule 23(a) and (b). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the rule--those designed to protect absentees by blocking unwarranted or overbroad class definitions--demand undiluted, even heightened, attention in the settlement context." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Application of this standard to the elements — numerosity, commonality, typicality, adequacy, predominance, and superiority — shows settlement certification is appropriate. *See* Fed. R. Civ. P. 23(a)&(b).

Class action is vastly superior because the class is far too numerous and their claims are far too small for joinder or individual litigation. It is superior in this case because no "other means for putative class members to adjudicate their claims [exists]".  *Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013). Common questions of fact and law predominate in this case because each class member's claims essentially turn on interpretation of the same federal law and uniform corporate practices, and on substantively identical contractual language. *See* Loeser Decl., ¶ 11. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a

1    representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022, quoting *Amchem*, 521

2    U.S. at 623.

3          A classwide settlement is therefore appropriate in this case because the claims of the

4    representative plaintiffs are typical, and they and their counsel have fairly and adequately

5    represented the interest of the class. "Under the rule's permissive standards, representative claims

6    are 'typical' if they are reasonably co-extensive with those of absent class members; they need not

7    be substantially identical." *Hanlon*, 150 F.3d at 1020. This element is satisfied because Chase

8    charged each of the representative plaintiffs for LPFI, including backdated and excessive coverage

9    policies, and profited from commissions thereon. *See* Clements Decl. ISO Fee Mtn., ¶ 6; Scheetz

10   Decl. ISO Fee Mtn., ¶¶ 5-7; Piterniak Decl. ISO Fee Mtn., ¶¶ 5-6; *See* Loeser Decl., ¶ 12

11         Adequacy is satisfied because Class Counsel are adequate, and because neither they nor the

12   representative plaintiffs are in conflict with the class. "To satisfy constitutional due process

13   concerns, absent class members must be afforded adequate representation before entry of a judgment

14   which binds them." *Hanlon*, 150 F.3d at 1020. "Resolution of two questions determines legal

15   adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class

16   members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

17   behalf of the class?" *Id.* at 1020.

18         Both adequacy prongs are satisfied here. The representative plaintiffs have no conflicts with

19   the settlement class. *See* Clements Decl. ISO Fee Mtn., ¶¶ 9-11; Scheetz Decl. ISO Fee Mtn., ¶¶ 5-

20   10; Piterniak Decl. ISO Fee Mtn., ¶¶ 5-10. On the contrary, their interests are well aligned because

21   they have no actual conflicts and seek the same relief for the same legal injury. *See id.* Similarly,

22   Class Counsel have no conflicts with the settlement class.  *See* Loeser Decl., ¶ 12 . On the contrary,

23   their interests were well aligned with those of the class because they were representing them on a

24   contingency basis and seek a percentage of the cash recovery. The evidence shows that the

25   representative plaintiffs and their counsel vigorously prosecuted the action on behalf of the class. *See*

26   Loeser Decl. ISO Fee Motion, ¶¶ 11-27 (Dkt. No. 66); Carson Decl. ISO Fee Motion, ¶¶ 10-53 (Dkt.

27   No. 73).

28

Finally, this settlement raises no adequacy concerns like those in *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013). *See* Fee Mtn., pp. 20-21.[9] There, when several named plaintiffs disagreed with a proposed settlement, class counsel withdrew from their representation, and had different named plaintiffs execute a settlement agreement that provided for service awards only to those "serving as class representatives in support of the Settlement." *See id.* at 1162. The Ninth Circuit held that such "conditional incentive awards" created a structural conflict that rendered the class representation inadequate. *See id.* at 1164-65, 1168. Here, the Settlement Agreement does not provide for conditional incentive awards, and Class Counsel never otherwise sought to use incentive awards to pressure or bribe class representatives to accept the proposed settlement. *See* Settlement Agreement at ¶ 40; Loeser Decl. ISO Fee Mtn., ¶¶ 32-33; Fredman Decl. ISO Fee Mtn., ¶¶ 7-9 (Dkt. No.68); Carson Decl. ISO Fee Mtn., ¶¶ 89-90; Clements Decl. ISO Fee Mtn., ¶ 11; Scheetz Decl. ISO Fee Mtn., ¶ 11; Piterniak Decl. ISO Fee Mtn., ¶ 11.

### 4.    Class Notice satisfied Rule 23 and due process

The Class Notice satisfies Rule 23 and due process in this case. Under Rule 23(e), a "class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e). Under Rule 23(c),

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, in accordance with this legal standard, the Court approved the form and plan of Class Notice in connection with its preliminary approval of the settlement. *See* Prelim. App., ¶ 6. The

---

[9] *Radcliffe* is discussed in greater detail in the Fee Motion.

1    Settlement Administrator has now conscientiously completed implementation of the same. *See*

2    Simmons Decl., ¶¶ 9-20. The Settlement Agreement, moreover, further safeguards due process

3    because it excludes class members "whose Class Notices were returned as non-deliverable" from

4    the release. *See* Settlement Agreement, § 61. Thus, the best practicable notice to the Settlement

5    Class has been achieved, and due process satisfied.

6    **B.      The Court Should Approve the Plan of Allocation**

7              The Court should approve the planned allocation of the net settlement proceeds among the

8    Settlement Class members because it too is fair, reasonable, and adequate. Approval of a plan to

9    allocate settlement proceeds is governed by the same standard for approving a settlement as a

10   whole. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). "An allocation

11   formula need only have a reasonable, rational basis, particularly if recommended by 'experienced

12   and competent' class counsel." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367

13   (S.D.N.Y. 2002). "A plan of allocation that reimburses class members based on the extent of their

14   injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS 21593, at *3, No.

15   C-90-0931-VRW (N.D. Cal. June 16, 1994). Here, the planned allocation is reasonable because its

16   design and effect is to (1) provide all class members with shares of the settlement fund that are

17   proportionate to their damages claims to the extent possible and (2) maximize the distribution to

18   the settlement class. *See* Settlement Agreement, §§ 28-36; Olsen Decl., ¶ 19; Simmons Decl.;

19   Loeser Decl. at ¶ 13.

20   **C.      The Court Should Approve Habitat For Humanity as *Cy Pres* and/or Designate Others**

21             The Settlement Agreement designates as *cy pres* the Habitat For Humanity or "another

22   suitable alternative *cy pres* recipient that is approved by the Court." *See* Settlement Agreement, §

23   36. Habitat For Humanity is a non-profit organization that the parties selected based on its housing

24   related mission and involvement in providing assistance after floods. *See* www.habitat.org/disaster.

25   The Court should approve this candidate which has been agreed upon by the parties.

26   **D.      The Court Should Approve Updated Litigation and Settlement Administration Costs**

27             Class Counsel requests updated expense reimbursements because those sought in the Fee

28   Motion failed to account for subsequent expenses, in particular expert fees for the final damage and

MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.: 12-02179-JCS                          - 17 -
010312-11  691424 V1

distribution computations described in this motion. *See* Olsen Decl., ¶ 21; Loeser Decl., ¶¶ 4-5. Conversely, the Settlement Administrator's estimated notice and claims administration costs were overstated (because the estimate of the class size was overstated). *See* Simmons Decl., ¶¶ 28-30. The Settlement Administrator has revised the costs downward to $232,875.04 (from his $343,226.00) and requests approval as set forth above except that the revised estimate does not include the potential costs of a potential second distribution. *See id.* The plan is that such expenses be charged as expenses against the residual Net Settlement Fund prior to the second distribution if necessary.

## V.    CONCLUSION

For the reasons set forth above and in the Fee Motion, Plaintiffs and Class Counsel respectfully request that the Court enter the single proposed order and judgment submitted herewith granting final approval to this settlement as requested herein.

DATE:      May 16, 2014                    Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**


By:    */s/ Thomas E. Loeser*
Steve W. Berman
Thomas E. Loeser (Cal. Bar No. 202724)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Shanon J. Carson, *pro hac vice*
Sarah R. Schalman-Bergen, *pro hac vice*
Patrick Madden
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
pmadden@bm.net

***Co-Lead Class Counsel***

Seth Miles
David M. Buckner
Brett E. von Borke
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, FL 33134
Telephone: (305) 442-8666
Facsimile: (305) 285-1668
sem@grossmanroth.com
dbe@grossmanroth.com
bvb@grossmanroth.com

Edward W. Ciolko
Donna Siegel Moffa
Amanda R. Trask
KESSLER TOPAZ
MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Peter B. Fredman
LAW OFFICE OF PETER FREDMAN
125 University Ave., Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile: (510) 868-2627
peter@peterfredmanlaw.com

Jeffery J. Angelovich
Michael B. Angelovich
Christopher R. Johnson
NIX PATTERSON & ROACH, LLP
3600 North Capital of Texas Highway Bldng B Ste 350
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

Brad E. Seidel
NIX PATTERSON & ROACH, LLP
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brett Cebulash
Kevin S. Landau
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
Facsimile: (212) 931-0703
bcebulash@tcllaw.com
klandau@tcllaw.com

***Additional Class Counsel***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2014 I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via electronic mail to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.


                                        s/Thomas E. Loeser
                                        Thomas E. Loeser